UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN C. MIDDLETON, | ) | |
| | ) | |
| Petitioner, | ) | **CAPITAL HABEAS** |
| | ) | |
| | ) | No. 4:03CV543 CDP |
| | ) | |
| DONALD P. ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM, ORDER AND STAY OF EXECUTION

Petitioner John C. Middleton is scheduled to be executed shortly after midnight tonight. Yesterday he filed a second habeas petition alleging that he is not competent to be executed, and that his planned execution would violate his rights under the Eighth Amendment to the United States Constitution, as recognized in *Ford v. Wainwright,* 477 U.S. 399 (1986) and *Panetti v. Quarterman,* 551 U.S. 930 (2007). He seeks a stay of execution and a hearing on his *Ford* claim.

I conclude that Middleton has made "a substantial threshold showing of insanity" such that the execution should be stayed until he may receive a hearing on his claim under *Ford* that he is not competent to be executed. This is not a conclusion that he is actually incompetent, it is only a conclusion that he is entitled to a hearing on the issue.

In *Ford* the United States Supreme Court held that the "Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." Although the Court did not provide a standard for determining competency, in a concurring opinion, Justice Powell wrote that "the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." 477 U.S. at 422.

In *Panetti* the Court agreed with Justice Powell's definition, noting that "[a] prisoner's awareness of the State's rationale for an execution is not the same as a rational understanding of it." 551 U.S. at 959. The Court rejected the more restrictive standard that had been adopted by the Fifth Circuit Court of Appeals. That circuit had held that so long as a petitioner understood that he was to be executed and was aware of the reason the state was executing him, whether his understanding of those facts was *rational* was irrelevant. 551 U.S. at 956. In *Panetti* the Supreme Court held that a rational understanding was required, although it declined to set a more precise standard, and instead directed the lower court to hold a hearing to determine whether the petitioner's delusions "may render a subject's perception of reality so distorted that he should be deemed incompetent." *Id.* at 961-962.

Petitioner Middleton has provided evidence that he has been diagnosed with a variety of mental health disorders, and has received a number of psychiatric

2

medications over the years.  He has a lengthy history of abusing methamphetamine and other drugs. The affidavits he provided from other inmates and from the counsel who have dealt with him indicate that his mental state has deteriorated over the 17 years he has been incarcerated.  The inmates indicate that he frequently talks to people who are not there, and tells stories that could not have had any basis in reality.[1]

Middleton has also provided an affidavit from a psychiatrist who examined him and reviewed the records available.  Dr. William S. Logan offered a preliminary opinion that petitioner "lacks a rational understanding of the reason for the execution and is therefore not competent to be executed due to a diagnosis of delusional disorder, a psychotic mental illness."  Affidavit of William S. Logan, M.D., at p. 3 (doc. # 130-1).  Dr. Logan described Middleton's mental state:

> Mr. Middleton's mental state is characterized by rambling, tangential speech; rapid switching to irrelevant topics; auditory hallucinations to which he responds, at times observed by others; suspiciousness and a preoccupation with irrelevant minor details which hinders the efforts of his defense attorneys, a pervasive distrust of the legal system including the efforts of previous attorneys on his behalf; and delusional ideas generally persecutory and grandiose in nature.

Affidavit of William S. Logan, M.D., at p. 2 (doc. # 130-1).  Although the psychiatrist characterizes this opinion as "preliminary" because he wishes to obtain additional information, it is sufficient to make the "substantial threshold showing"

---

[1] The inmate affidavits were relied on by Dr. Logan in forming his opinion and are found in the record of Case No. 4:14CV1217CDP, as Exhibits B, C, D, E, and F (doc. ## 17-3 through 17 -7).

of incompetence that *Ford* recognized would entitle him to a stay of execution and a full hearing. This evidence is certainly as strong as that submitted in *Panetti.* There the petitioner's sufficient showing consisted of "a letter and a declaration from two individuals, a psychologist and a law professor, who had interviewed petitioner while on death row on February 3, 2004." 551 U.S.at 938.

Respondent argues that what petitioner's counsel characterize as delusions may be nothing more than optimism, and suggests that counsel's raising so many different arguments may have mislead Middleton into unrealistic optimism.[2] He also argues that certain recorded telephone conversations show that Middleton is manipulating the system and is not delusional. But these are the kind of arguments that should be considered at a full *Ford* hearing, not on a motion to stay execution. Without having a hearing the court cannot determine these complex factual issues, and under *Ford* and *Panetti,* once a substantial threshold showing has been made, petitioner is entitled to a full hearing.

Respondent makes several procedural arguments for why a stay of execution should not be granted. He argues that Middleton has unnecessarily delayed filing

---

[2] Middleton's counsel have raised a number of unsuccessful claims as the execution date approaches. Each of those claims was considered and rejected for separate reasons, but the fact that the Missouri Supreme Court, the Eighth Circuit Court of Appeals, and this court have rejected motions to stay execution based on other legal and factual claims does not mean that the *Ford* claim is also without merit.

4

his *Ford* claim, that he failed to obtain leave to amend his original habeas action to bring this claim, and that he has failed to exhaust adequate state remedies.

Because a *Ford* claim challenges a petitioner's competence at the time he is scheduled to be executed, it is not ripe until an execution has been scheduled, and it is not considered "second or successive" under 28 U.S.C. §2244. *Panetti,* 551 U.S. at 942-948.

The Missouri Supreme Court issued its order to show cause why an execution date should not be set for Middleton on February 28, 2014, and on May 30, 2014, that Court set the execution date for July 16, 2014. In February Middleton's counsel in fact sought an *ex parte* order for funds under the Criminal Justice Act to retain a psychiatrist to consider Middleton's competency, but I denied that request in my March 10, 2014 *ex parte* budget order (doc. # 105) because I determined that any competency claim was not ripe in the absence of an actual date for execution. Missouri typically sets execution dates approximately 45 days ahead of time, and that was what happened in this case. Once the actual execution date was set, Middleton's counsel again promptly sought funds for a psychiatric evaluation and began the process of having him evaluated. Given the combination of the short notice for an actual execution date and my (possibly incorrect) ruling that funds could not be provided even after the show cause order had issued, Middleton has shown that he did not unnecessarily delay filing this

claim.³  And because the *Ford* claim is a new claim that the Supreme Court says can be brought only after an execution date is set, leave of court to amend is not necessary.  Respondent's arguments about delay and leave to amend are therefore overruled.

Respondent's arguments that Middleton has failed to exhaust adequate state remedies is more complicated.  Obviously, both *Ford* and *Panetti* referred to hearings that should have been held in the state courts.  Middleton did not file a state habeas corpus petition raising the substantive *Ford* claim, but instead filed a writ of error coram nobis with the state trial court, and a motion for appointment of a special master with the Missouri Supreme Court.  Both motions challenged Missouri's lack of a method for raising *Ford* claims in state court and both sought as relief a full hearing on Middleton's competency to be executed.  Both were summarily denied by the Missouri courts; neither court explained its rationale for the denials.

Respondent argues that the proper route for raising the issue was a petition for habeas corpus to be filed directly with the Missouri Supreme Court under Rule 91, Mo. S. Ct. Rules.  Petitioner responds that Missouri does not provide an

---

³ With the benefit of hindsight it appears that it would have been wiser for Middleton to have filed this *Ford* claim last week, instead of filing his ill-fated § 1983 due process claim in Case No. 4:14CV1217CDP.  Although this court concluded that the § 1983 claim was without merit, that does not mean that there was anything improper about counsel's decision to pursue that claim.  In any event, the few days' difference does not show the kind of unnecessary delay that would warrant the court's refusal to consider a valid *Ford* claim, especially given the very short notice before the execution date.

6

adequate state remedy to consider competency to be executed, because Rule 91 proceedings may be filed for specific types of claims. Petitioner relies on *State ex rel. Simmons v. White,* 866 S.W. 2d 443 (Mo. banc 1993), which lists a very limited category of cases where Rule 91 may be used. Respondent argues that Rule 91 could be used and points to a Rule 91 filing made by Joseph Franklin when he was facing execution, Missouri Supreme Court Case No. SC 93800, which was summarily denied (doc. # 133-1, p. 86-91). Petitioner also argues that the *Franklin* case supports his argument. Because the Missouri Supreme Court's form order denying the writ in *Franklin* gives no reason for the denial, this Court cannot determine whether it was a denial on the merits, which might indicate that the Supreme Court considered Rule 91 the appropriate procedure, or a denial because Rule 91 is not available for such claims. The parties do agree that there is no Missouri statute, court rule, or case law specifically discussing the appropriate way for a Missouri death row inmate to present a *Ford* claim to the state courts. The only statute having any relevance is Mo. Rev. Stat. § 552.060.2, but that only requires the Director of the Missouri Department of Corrections to notify the Governor if he believes an inmate scheduled for execution is not competent. That statute provides no remedy that someone in Middleton's position could invoke, and certainly does not provide the type of process that both *Ford* and *Panetti* indicated

7

were required. I conclude that Middleton has shown that he has fulfilled the exhaustion requirement because there is no adequate state remedy available to him.

*Ford* requires that once a petitioner has made a substantial threshold showing that he is not competent to be executed, he must be granted a stay of execution and a hearing where he is given the opportunity to present evidence relating to his competence. *Panetti* holds that for a petitioner to be competent he must have a rational understanding of the reasons the state is seeking to execute him, and that the court should consider whether a petitioner's delusional beliefs preclude such a rational understanding. Middleton has made a substantial threshold showing that his delusions are interfering with his rational understanding in this case. This is not a decision that he is not competent to be executed – that determination is one that can only be made after the full hearing required under *Ford*.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner's motion to stay execution [#131] is GRANTED and the execution scheduled for July 16, 2014, is STAYED.

*Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of July, 2014.